1  **McGuireWoods, LLP**
   A. Brooks Gresham (SBN 155954)
2  Laura Coombe (SBN 260663)
   1800 Century Park East, 8th Floor
3  Los Angeles, CA 90067-1501
   Telephone: 310.315.8200
4  Facsimile: 310.315.8210
   bgresham@mcguirewoods.com
5  lcoombe@mcguirewoods.com

6  Angela M. Spivey (*pro hac vice*)
   McGuireWoods LLP
7  1230 Peachtree Street, NE
   Promenade, Suite 2100
8  Atlanta, GA 30309-3534
   Telephone: 404.443.5720
9  Facsimile: 404.443.5792
   aspivey@mcguirewoods.com
10
   *Attorneys for Defendant ConAgra Foods, Inc.*
11
                    UNITED STATES DISTRICT COURT
12
                  NORTHERN DISTRICT OF CALIFORNIA
13
                          OAKLAND DIVISION
14

15 TROY WALKER, on behalf of himself        No. 4:15-CV-02424-JSW
   and all others similarly situated
16                                          Honorable Jeffrey S. White

17          Plaintiff,                      **NOTICE OF MOTION AND MOTION TO
                                            DISMISS PLAINTIFF'S CLASS ACTION
18      vs.                                 COMPLAINT; MEMORANDUM OF
                                            POINTS AND AUTHORITIES IN
19 CONAGRA FOODS, INC.,                     SUPPORT THEREOF

20                                          Date:       September 4, 2015
            Defendant.                      Time:       9:00 a.m.
21                                          Courtroom:  5

22
                                            The Honorable Jeffrey S. White
23

24

25

26

27

28

---

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
Case No. 4:15-cv-02424-JSW

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 4, 2015, at 9:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, located in Courtroom 5, Second Floor, 1301 Clay Street, Oakland, California, Defendant ConAgra Foods, Inc. ("ConAgra Foods") will and hereby does, move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for an order dismissing each claim for relief asserted in the Class Action Complaint filed by Plaintiff Troy Walker. ConAgra Foods brings this motion on the grounds that:

(i)     Plaintiff's claims are expressly preempted by federal law;

(ii)    Plaintiff lacks Article III standing to assert his claims;

(iii)   Plaintiff's Complaint fails to satisfy the pleading requirements of Rule 8 or Rule 9;

(iv)    Plaintiff's class allegation must be dismissed because Plaintiff lacks Article III standing to represent the putative class as defined and Plaintiff cannot satisfy Rule 23(a)'s adequacy requirement; and,

(v)     ConAgra Foods moves in the alternative that the Court dismiss or stay this action under the doctrine of primary jurisdiction, so that the Food and Drug Administration may exercise its jurisdiction, in the first instance, to resolve issues falling within its unique expertise.

ConAgra Foods bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, all pleadings and papers filed in this action, oral argument of counsel, and any other matters that may come before the Court.

Dated: July 23, 2015                           Respectfully submitted,

                                               McGuireWoods LLP
                                               /s/ Laura Coombe
                                               A. Brooks Gresham
                                               Laura Coombe

                                               Angela M. Spivey (*pro hac vice*)

                                               Attorneys for ConAgra Foods, Inc

# <u>TABLE OF CONTENTS</u>

**Page**

I.  STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.  STATEMENT OF RELEVANT FACTS ....................................................................... 1

III.  LEGAL STANDARD ........................................................................................... 1

IV.  ARGUMENT AND CITATION TO AUTHORITY ........................................................ 2

    A.  Plaintiff's Claims Are Preempted by Federal Law. ................................................ 2

        1.  Plaintiff's claims are expressly preempted because the requirements they would impose are not identical to the federal position. ........................ 3

        2.  A Series of California U.S. District Court Cases Directly On Point Have Rejected Claims Almost Identical to Plaintiff's Based on Preemption. ................................................................................... 5

    B.  Plaintiff's Claims Should Be Dismissed Under The Doctrine of Primary Jurisdiction. ....................................................................................... 7

    C.  Plaintiff Lacks Article III Standing. ...................................................................... 10

    D.  Plaintiff Has Not Adequately Pled That A Misrepresentation Exists. .................... 12

    E.  Plaintiffs' Class Allegations Should Be Stricken/Dismissed On Adequacy, Typicality, And Article III Standing Grounds. ........................................................ 13

    F.  Certain of Plaintiffs' Other Causes of Action Also Fail For Other Reasons. ......... 14

V.  CONCLUSION ..................................................................................................... 15

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT
Case No. 4:15-cv-02424-JSW

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................................ 1

*Bal v. New Penn Fin. LLC*
   2015 U.S. Dist. LEXIS 81559 (C.D. Cal. June 22, 2015)........................................................ 13

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................................ 2

*Bohac v. Gen. Mills, Inc.*
   2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014) ............................................. 4, 5, 15

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
   2011 U.S. Dist. LEXIS 6371 (N.D. Cal. Jan. 10, 2011) ........................................i, 5, 6, 7, 13

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
   475 Fed. Appx. 113 (9th Cir. 2012) ........................................................................................ 6

*Chacanaca v. Quaker Oats Co.*
   2010 U.S. Dist. LEXIS 111981 (N.D. Cal. 2010)........................................................i, 5, 6, 7

*Clark v. Time Warner Cable*
   523 F.3d 1110 (9th Cir. 2008) ................................................................................................. 8

*Davel Commc'ns, Inc. v. Qwest Corp.*
   460 F.3d 1075 (9th Cir. 2006) ................................................................................................. 8

*Engurasoff v. Coca-Cola Co.*
   2014 U.S. Dist. LEXIS 116936 (N.D. Cal. Aug. 21, 2014) ................................................... 15

*Fraker v. KFC Corp.*
   No. 06-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007).................................................... 9

*Granfield v. NVIDIA Corp.*
   No. C. 11 05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ...................................... 14

*Hairston v. S. Beach Bev. Co.*
   No. CV 12-1429-JFW, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................... 12

*Hannon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992)................................................................................................... 13

*Hoyte v. Yum! Brands, Inc.*
   489 F. Supp. 2d 24 (D.D.C. 2007) ......................................................................................... 15

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*
    831 F. Supp. 2d 507 (D. Mass. 2011) ............................................................ 11

*In re Toyota Motor Corp.*
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ............................................................ 14

*Lewis v. Casey*
    518 U.S. 343 (1996) ...................................................................................... 10

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (U.S. 1992) ........................................................................ 2, 10

*Mazza v. Am. Honda Motor Co., Inc.*
    666 F.3d 581 (9th Cir. 2012) ........................................................................ 14

*McDaniel v. Wells Fargo Invs. LLC*
    717 F.3d 668 (9th Cir. 2013) .......................................................................... 2

*New York State Rest. Ass'n v. New York City Bd. of Health*
    509 F. Supp. 2d 351 (S.D.N.Y. 2007) ............................................................ 5

*O'Shea v. Littleton*
    414 U.S. 488 (1974) ...................................................................................... 13

*Pardini v. Unilever United States, Inc.*
    961 F. Supp. 2d 1048 (N.D. Cal. 2013) ........................................................ 14

*Pence v. Andrus*
    586 F.2d 733 (9th Cir. 1978) ........................................................................ 13

*Peterson v. ConAgra Foods*
    No. 13-cv-3158-L, 2014 U.S. Dist. LEXIS 104073 (July 29, 2014) ................ 7

*Peviani v. Hostess Brands, Inc.*
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ................................................ i, 5, 6, 7

*Red v. Kroger Co.*
    2010 U.S. Dist. LEXIS 115238 (C.D. Cal. Sept. 2, 2010) .......................... 5, 6, 7

*Rhoades v. Avon Prods., Inc.*
    504 F.3d 1151 (9th Cir. 2007) ........................................................................ 8

*Rosen v. Unilever, Inc.*
    No. C 09-02563 JW, 2010 WL 4807100 (N.D. Cal. May 3, 2010) ................ 13

*Saubers v. Kashi Co.*
    39 F. Supp. 3d 1108 (S.D. Cal. 2014) .................................................... i, 8, 10

*Simpson v. Cal. Pizza Kitchen, Inc.*
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ................................................ i, 10, 11

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001).................................................................................. 2

*Stewart v. United States Bancorp*
    297 F.3d 953 (9th Cir. 2002)................................................................................. 2

*Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*
    307 F.3d 775 (9th Cir. 2002).............................................................................. 8, 9

*Tietsworth v. Sears, Roebuck and Co.*
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................. 13

*Warth v. Seldin*
    422 U.S. 490 (1975) ........................................................................................... 10

*Weinberger v. Bentex Pharms, Inc.*
    412 U.S. 645 (1973) ........................................................................................... 10

*Weiss v. The Kroger Co.*
    Case No. 2:14-cv-03780, slip op. (C.D. Cal. Aug. 8, 2014) ................................ 12

*Wyeth v. Levine*
    129 S. Ct. 1187 (2009) ......................................................................................... 3

**CALIFORNIA CASES**

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ...................................................... 5

*Daugherty v. Am. Honda Motor Corp., Inc.*
    144 Cal. App. 4th 824 (2006) ............................................................................. 15

*Mocek v. Alfa Lesirue, Inc.*
    114 Cal. App. 4th 402 (2003) ............................................................................. 14

*Simpson v. Kroger Corp.*
    No. BC475665, 2013 WL 5347881 (Cal. Ct. App. Sept. 25, 2013) ..................... 12

**FEDERAL STATUTES**

21 U.S.C.
    § 321 .................................................................................................................... 9
    § 343 .......................................................................................................... i, 3, 4, 6
    § 348 ................................................................................................................. 7, 9
    § 393(b) ................................................................................................................ 7

**CALIFORNIA STATUTES**

Cal. Com. Code
    § 2316 ................................................................................................................. 15

**OTHER AUTHORITIES**

21 C.F.R.
    § 10.25(b) ................................................................................................... 9
    § 101.9 (c)(2)(ii) ....................................................................................... i, 3
    § 101.13(i) .................................................................................................. i, 3
    § 171.1(c) .................................................................................................... 9
    § 171.100 ............................................................................................. 7, 8, 9

80 Fed. Reg. at 34656 ..................................................................................... 8, 9

Fed. R. Civ. P.
    Rule 12 .............................................................................................. 1, 2, 10
    Rule 23 ......................................................................................................... 14

U.S. Constitution Art. III ......................................................... 1, 2, 10, 11, 13

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION
Case No. 4:15-cv-02424-JSW

# SUMMARY OF ARGUMENT

Plaintiff's causes of action are premised on the argument that Crunch 'n Munch's "0g Trans Fat per serving" label claim is actionable under California law because the product contains some amount of trans fat. Plaintiff's claims are expressly preempted by federal law. *See* 21 C.F.R. § 101.9 (c)(2)(ii) (trans fat disclosure to be measured to the nearest 0.5 grams and if below 0.5 grams may only be expressed as "zero."); 21 C.F.R. § 101.13(i) (allowing identical claims elsewhere on packaging); 21 U.S.C. § 343-1(a)(4) (express preemption). Per this regulatory scheme, state tort law cannot impose a contrary labeling requirement. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371, *12 (N.D. Cal. Jan. 10, 2011) (dismissing "0 Grams Trans Fat" claims as preempted); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111 (C.D. Cal. 2010) (same); *Chacanaca v. Quaker Oats Co.*, 2010 U.S. Dist. LEXIS 111981 (N.D. Cal. 2010) (same). Alternately, the Court should dismiss Plaintiff's claims under the doctrine of primary jurisdiction in light of the FDA's ongoing regulatory efforts regarding trans fat labeling and content. *Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1111 (S.D. Cal. 2014).

Plaintiff lacks standing because he has no injury in fact. The only "injury" alleged is economic harm flowing from the purchase of Crunch 'n Munch allegedly in reliance on the "0g Trans Fat per serving" claim. *Id.* ¶ 115. But, Plaintiff's assertion that he "relied" on the "0g Trans Fat" claim, (*Id.* ¶ 68), is contradicted by his allegation that during the class period the "dangers of artificial trans fats" were unknown to Plaintiff. *Id.* Moreover, Plaintiff was not economically injured because he admittedly consumed the product he purchased, thereby realizing its value. *Id.* ¶ 9; *see Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013).

Plaintiff's claims are also subject to dismissal because they are based on a misreading of the product label. Additionally, Plaintiff's class allegations should be stricken because Plaintiff lacks standing and is inadequate to represent non-California purchasers.

**DEFENDANT CONAGRA FOODS, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

## I.    STATEMENT OF ISSUES TO BE DECIDED

1.  Are Plaintiff's claims preempted by federal law regulating trans fat labeling?

2.  Does Plaintiff lack Article III standing because he has not pled a viable injury in fact?

3.  Should Plaintiff's class claims be dismissed on standing and various other grounds?

4.  Should this Court dismiss Plaintiff's claims under the doctrine of primary jurisdiction?

## II.   STATEMENT OF RELEVANT FACTS[1]

ConAgra Foods produces a caramel popcorn snack under the brand name Crunch 'n Munch®.  Compl. ¶ 4.  Crunch 'n Munch's label contains a statement that it contains "0g Trans Fat per serving."  *Id.* ¶ 71.  Plaintiff alleges Crunch 'n Munch contains some trans fat in the form of PHO.  *Id.* ¶¶ 4-6.  Plaintiff does not allege how much trans fat is present in a serving of Crunch 'n Munch.  Plaintiff further alleges the "0g Trans Fat claim is an unauthorized nutrient content claim."  *Id.* ¶ 74.  Conveniently, Plaintiff ignores the federal regulatory regime explicitly authorizing "0g Trans Fat per serving" labeling on products containing less than 0.5g trans fat per serving.  Crucially, those regulations, found in the Nutrition Labeling and Education Act ("NLEA"), contain an express preemption clause fatal to each of Plaintiff's claims.

Nonetheless, Plaintiff, individually and on behalf of a putative nationwide class, asserts seven causes of action:  violations of the "Unlawful," "Fraudulent," and "Unfair" prongs of California's Unfair Competition Law ("UCL"); California False Advertising Law ("FAL"); and California Consumers Legal Remedies Act ("CLRA"); and breaches of express and implied warranties.  *Id.* ¶¶ 102-159.  Plaintiff seeks injunctive and monetary relief.  *Id.* ¶ 10.

## III.  LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), a plaintiff must do more than state conclusions or recite elements of causes of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.

---

[1] The facts in this section that are alleged in Plaintiff's Complaint are accepted as true only for purposes of this motion to dismiss.

Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At a minimum, a plaintiff must allege facts that, if true, would raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. While the Court must accept material allegations and make reasonable inferences from them, it need not accept conclusory allegations or legal conclusions, or make unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Dismissal is also appropriate under Rule 12(b)(6) in instances where a state law claim is preempted by federal law. *See Stewart v. United States Bancorp*, 297 F.3d 953, 955 (9th Cir. 2002); *McDaniel v. Wells Fargo Invs.*, LLC, 717 F.3d 668, 672 (9th Cir. 2013).

Finally, under Article III of the U.S. Constitution, the federal courts may decide only actual "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (U.S. 1992). To have standing to sue in federal court, a plaintiff must show, *inter alia*, that he has suffered an actual, concrete, and particularized injury in fact, and that there is a causal connection between the alleged injury and the challenged conduct such that the injury is fairly traceable to the conduct complained of. *Lujan*, 504 U.S. at 560-61. The party invoking federal jurisdiction has the burden of establishing these elements. *Id.* at 561.

## IV.    ARGUMENT AND CITATION TO AUTHORITY[2]

### A.    <u>Plaintiff's Claims Are Preempted by Federal Law.</u>

The gravamen of Plaintiff's Complaint is that Crunch 'n Munch's label states it contains "0g Trans Fat" per serving when it, in fact, contained some amount of trans fat. *See* Compl. ¶¶ 10; 68; 71; 74; 92. Accordingly, each and every cause of action contained in Plaintiff's Complaint hinges on Plaintiff's assertion that Crunch 'n Munch's "0g Trans Fat per serving" label statement violates some aspect of California law. *See id.* ¶¶ 103; 123; 130 136; 144; 150; 154. However, because Crunch 'n Munch's representation that it contains 0g Trans Fat per serving is consistent

---

[2] Because of page limitations, ConAgra is unable to completely and fully address all of the many defects in Plaintiff's Complaint. ConAgra concisely addresses some of these defects in footnotes, but is happy to provide a fuller treatment of these arguments either in supplemental briefing or at oral argument on this motion if the Court wishes.

with the NLEA, the NLEA's express preemption provision preempts all of Plaintiff's claims. Numerous courts, including this one, have rejected claims identical to those here based on preemption. Accordingly, Plaintiff's entire Complaint is subject to dismissal.

    **1.    Plaintiff's claims are expressly preempted because the requirements they would impose are not identical to the federal position.**

    The FDA regulates what trans fat disclosures must be made and explicitly rejected the suggestion that trans fat disclosures should be made as Plaintiff demands. FDA regulates trans-fat disclosures for both the "Nutrition Facts" panel and representations made elsewhere on the label. For the "Nutrition Facts" panel, FDA issued a regulation[3] in 2003 governing the disclosure of trans fat in food. 21 C.F.R. § 101.9 (c)(2)(ii). Trans fat is measured in grams to the nearest 0.5 grams below 5 grams. If a product has less than 0.5 grams of trans fat per serving, a manufacturer need not disclose the amount of trans fat at all. A manufacturer may *choose* to do so, but if it does, it is *required* to express the amount as "zero" grams:

> A statement of the number of grams of trans fat in a serving . . . is not required for products that contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content. . . . Trans fat content shall be indented and expressed as grams per serving to the nearest 0.5 (1/2)-gram increment below 5 grams and to the nearest gram increment above 5 grams. *If the serving contains less than 0.5 gram, the content, when declared, shall be expressed as zero.*

*Id.* (emphasis added.) FDA also regulates the declaration of nutrients outside the "Nutrition Facts" box. 21 C.F.R. § 101.13(i) (promulgated pursuant to 21 U.S.C. § 343(r)). These provisions specifically allow a product label to include statements outside the "Nutrition Facts" box so long as they are not independently false or misleading and are consistent with definitions set forth in other portions of the FDCA. How can ConAgra Foods' use, outside the Nutrition Facts box, of the exact same trans fat disclosure required by the FDA in the Nutrition Facts box be false or misleading?

---

[3] *See Wyeth v. Levine*, 129 S. Ct. 1187, 1200 (2009) ("[A]gency regulations with the force of law can pre-empt conflicting state requirements.").

The nutrition labeling regulations at issue are subject to broad express preemption under 21 U.S.C. § 343-1(a)(4) and (5), and Plaintiff cannot use state tort law to impose a contrary labeling requirement. *See Mills*, 441 F. Supp. 2d at 106-09 (noting the breadth of the preemption clause). No state may "directly or indirectly establish . . . any requirement for the labeling of food that is *not identical to* the requirement of section 403(q) [21 U.S.C. § 343(q)]" (emphasis added). A similar provision applies to section 403(r), 21 U.S.C. § 343(r). Thus, a court may impose labeling requirements *only if* "identical to" FDA's requirements. *Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1086, 72 Cal. Rptr. 3d 112 (2008).

Plaintiff's action, if it succeeded, would establish state-law requirements that not only differ dramatically from the federal ones, but would explicitly contradict them. Plaintiff does not contend that a serving contains more than 0.5 grams (nor can he). *See generally*, Compl. The Complaint alleges only that the label says "0g" but was "made with PHO." *Id.* ¶ 71. But as FDA has explained, if a consumer sees "0g" trans fat per serving on a label, it means the food contains less than 0.5 grams of trans fat per serving:

> **L48.  Is it possible for a food product to list the amount of trans fat as 0 g on the Nutrition Facts label if the ingredient list indicates that it contains "partially hydrogenated vegetable oil?"**
>
> **Answer:**  Yes.  Food manufacturers are allowed to list amounts of trans fat with less than 0.5 gram (1/2 g) as 0 (zero) on the Nutrition Facts label.  As a result, consumers may see a few products that list 0 gram trans fat on the label, while the ingredient list will have "shortening" or "partially hydrogenated vegetable oil" on it.  This means the food contains *very small amounts* (less than 0.5 g) of trans fat per serving.

*See* FDA Food Labeling Guide, Part VII, L48 (emphasis added).[4]

Thus, Crunch 'n Munch is labeled "0g" trans fat per serving because FDA requires it. Plaintiff would have this Court demand manufacturers disclose trans fat in less than 0.5-gram increments and do so even if the amount per serving is less than 0.5 grams. Because that differs from what FDA requires manufacturers to do, Plaintiff's claims are expressly preempted by the

---

[4]http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm064904.htm#transfat (last visited July 7, 2015).

NLEA. *See PepsiCo*, 588 F. Supp. 2d at 532-39 (finding express preemption of state-law consumer-protection action involving source of bottled water); *New York State Rest. Ass'n v. New York City Bd. of Health*, 509 F. Supp. 2d 351, 362-63 (S.D.N.Y. 2007) (finding express preemption of city regulation involving menu calorie-content statements); *Mills*, 441 F. Supp. 2d at 106-09 (same for state-law tort claims alleging failure to warn milk-drinkers about risk of lactose intolerance).[5]

### 2. A Series of California U.S. District Court Cases Directly On Point Have Rejected Claims Almost Identical to Plaintiff's Based on Preemption.

In a series of opinions directly on point, U.S. District Courts throughout California have found "0g Trans Fat per serving" claims outside the Nutrition Facts Panel are preempted by the NLEA and FDCA. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 U.S. Dist. LEXIS 6371, *12 (N.D. Cal. Jan. 10, 2011); *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1119-1120 (C.D. Cal. 2010); *Chacanaca v. Quaker Oats Co.*, 2010 U.S. Dist. LEXIS 111981 (N.D. Cal. 2010); *Red v. Kroger Co.*, 2010 U.S. Dist. LEXIS 115238, *13-14 (C.D. Cal. Sept. 2, 2010).

In *Peviani*, for example, the plaintiff alleged defendant's statement that certain baked goods contained "0 Grams of Trans Fat" was "deceptive and misleading" because the products contained PHOs. *Peviani*, 750 F. Supp. 2d at 1119. However, the *Peviani* Court disagreed. First, the court recognized that a statement "0 Grams of Trans Fat" in the Nutrition Facts Panel was required when a manufacturer elected to disclose trans fat content below 0.5g per serving. *Id.* Accordingly, the court found that although defendants' use of the phrase "0 Grams of Trans Fat" outside the Nutrition Facts Panel constituted an express nutrient content claim, "defendant's use of

---

[5]The FDA labeling requirements would also bar Plaintiff's UCL and FAL claims because the regulations constitute a "safe harbor." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182, 83 Cal. Rptr. 2d 548 (1999). In *Cel-Tech*, the court held that if a law or regulation expressly permits certain conduct, courts may not override that determination and make the conduct illegal. Here, FDA not only permits the conduct, it ***requires*** the conduct where trans fat content below 0.5 grams per serving is disclosed. Plaintiff does not allege Defendants failed to comply with FDA regulations.

this same phrase elsewhere on the product label ***cannot*** be false or misleading." *Id.* (emphasis added); *see also Chacanaca*, 2010 U.S. Dist. LEXIS 111981, at *22-23 ("if 'nutritionally insignificant amounts' of less than 0.5 gram trans fat means the same thing, according to [FDA] regulations, as '0 grams,' then the use of the latter language in an express nutrient content claim would not be misleading within the meaning of section (r) or any of its regulations.")

Accordingly, the *Peviani* Court dismissed all of Plaintiff's claims with prejudice finding:

> Plaintiff's claims seek to enjoin the use of the very term permitted by the NLEA and its accompanying regulations. Plaintiff's claims must therefore fail because they would necessarily impose a state-law obligation for trans fat disclosure that is not required by federal law.

*Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d at 1119; *see also Chacanaca*, 2010 U.S. Dist. LEXIS 111981, at *23; *Red*, 2010 U.S. Dist. LEXIS 115238, *15-16; *Carrea*, 2011 U.S. Dist. LEXIS 6371, *12.

This Court reached the exact same conclusion in *Carrea*. *Carrea*, 2011 U.S. Dist. LEXIS 6371, *12. In *Carrea*, the plaintiff challenged a "0g Trans Fat" statement appearing on the front of the product package. *Id.* This Court followed the same reasoning as *Peviani* and *Chacanaca*, finding: "the '0g Trans Fat' statement on Defendant's Drumsticks packaging, outside the Nutrition Facts box, is a nutrient content claim subject to the express preemption provision of the NLEA, 21 U.S.C. § 343-1(a)." *Id.* (citing *Chacanaca*, 2010 U.S. Dist. LEXIS 111981, at *23). The Ninth Circuit subsequently affirmed this decision. *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. Appx. 113, 115 (9th Cir. 2012).

Finally, just this month, the honorable Judge William Alsup of Northern District of California issued an order relying on *Chacanaca* and *Carrea* and finding all labeling claims based on a "0g Trans Fat" label statement expressly preempted by the NLEA. *Guttmann v. Nissin Foods(U.S.A.) Co. Inc.*, Case No. 4:15-cv-00567-WHA (N.D. Cal. July 15, 2015) (attached hereto as **Ex. A**.)[6]

---

[6] Although Judge Alsup found each and every claim based on product labeling preempted by federal law, he found plaintiff's implied warranty and UCL "Unfair" claims were not preempted because they were premised on Nissin's use of PHOs rather than the marketing or

6

The same analysis applies here. Each of Plaintiff's claims seeks to impose a state law disclosure obligation on ConAgra Foods that is inconsistent with the NLEA and FDCA. Moreover, Plaintiff seeks an injunction barring ConAgra Foods from using the very terminology mandated by the NLEA. Compl. ¶ 10. Accordingly, this Court should follow the well-reasoned rationale of *Carrea*, *Peviani*, *Chacanaca*, *Red*, and *Guttmann* and dismiss Plaintiff's Complaint with prejudice. As those courts recognized in similar situations, state law may not be used to second-guess FDA's regulatory decisions. Plaintiff's action is expressly preempted.[7]

## B.    Plaintiff's Claims Should Be Dismissed Under The Doctrine of Primary Jurisdiction.

In the event this Court finds any of Plaintiff's claims are not preempted by the NLEA and FDCA, it should nonetheless abstain from adjudicating Plaintiff's claims under the doctrine of primary jurisdiction.

The FDCA empowers the FDA to promulgate regulations for food ingredients. *See* 21 U.S.C. § 393(b). More specifically, the FDCA authorizes the FDA to review "food additive petitions," and to promulgate regulations based on those petitions to govern the use of certain ingredients in food. *See* 21 U.S.C. § 348(c)(1)(A), 21 C.F.R. § 171.100 (describing FDA's

---

labeling of the product. That distinction does not exist in this case because Walker's implied warranty and UCL "Unfair" claims are all based on the "0g Trans Fat per serving" label claim. Compl. ¶¶ 127-133, 153-159. Thus, all of Plaintiff's claims are preempted. In any event, there are other reasons why those claims fail here. *See* Section F.

[7] A June 18, 2015 FDA Order expressly permits the continued production, marketing, and sale of PHO products through June 18, 2018. Notably, Judge Alsup in *Guttman* found that the FDA Order did not change the preemption analysis of Plaintiffs' mislabeling claims, which were all dismissed. However, should this court determine that FDA's order impacts the preemption analysis, preemption would still clearly apply to Plaintiff's, and the class's, claims prior to June 18, 2015. *See, e.g., Peterson v. ConAgra Foods*, No. 13-cv-3158-L, 2014 U.S. Dist. LEXIS 104073 (July 29, 2014) (dismissing claims before a certain date based on preemption). This would mean that all such claims must be dismissed, and Plaintiff's claims and the class period would be limited to post-June 18, 2015. However, Plaintiff has no standing to make claims arising after June 18, 2015. His Complaint indicates that he stopped purchasing the product at issue prior to filing this case (filed on June 1, 2015), (Compl. ¶¶ 68-69), and thus would not have purchased it after June 18, 2015. Even if he had, he would have already been aware of the alleged misrepresentation and could not have been further deceived. *Id.* ¶ 67. Either way, dismissal based on lack of standing would be required. This would also be fatal to the class claims.

authority to review food additive petitions and establish regulations prescribing "the conditions under which such additive may be safely used"); *see also* 80 Fed. Reg. 34650 at 34656. When determining "the conditions under which such additive may be safely used" the regulations expressly allow the FDA Commissioner to dictate "labeling or packaging requirements for such additive deemed necessary by him to assure the safety of such use." 21 C.F.R. § 171.100. On June 18, 2015, the FDA issued a Declaratory Order invoking this authority to regulate PHOs via the food additive petition process, in conjunction with a decision to affirm PHO's lawful status as a food ingredient for at least the next three years. *See* 80 Fed. Reg. 34650 at 34651 & 34657. That Order expressly contemplates the FDA's continued regulation of PHOs through food additive petitions and potential future labeling regulations. *Id.*; 80 Fed. Reg. 34650, 34654 (reserving right to address PHOs through future labeling regulation).[8]

The primary jurisdiction doctrine applies where, as here, a plaintiff's claims implicate a federal agency's expertise for a regulated product. *Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1111 (S.D. Cal. 2014). Primary jurisdiction permits courts to dismiss an action pending resolution "of an issue within the special competence of an administrative agency." *Id.*; *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). "[C]ourts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts.'" *Davel Commc'ns, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086 (9th Cir. 2006) (citing *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*, 307 F.3d 775, 780 (9th Cir. 2002)). When analyzing primary jurisdiction, the Ninth Circuit traditionally considers four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781. Efficiency is the "deciding factor" in whether to invoke primary jurisdiction. *Rhoades v. Avon Prods., Inc.,* 504

---

[8] ConAgra Foods makes its primary jurisdiction argument strictly in the alternative because the FDA's June 18th, 2015 order did not alter or amend any of the FDCA or NLEA labeling or preemption provisions fatal to Plaintiff's claims.

F.3d 1151, 1165 (9th Cir. 2007).

All of the *Syntek* factors strongly favor dismissal. <u>First</u>, Plaintiff's claims require this Court to resolve an issue squarely within the purview of the FDA: The labeling and use of PHOs in food products. The FDA's June 18, 2015 Order evidences the agency's active role in considering these very issues. 80 Fed. Reg. 34650, 34654 (reserving right to address PHOs via future labeling regulations) and 34657 (encouraging industry to submit food additive petitions under section 409 of the FDCA). <u>Second</u>, the labeling and use of substances such as PHOs is an issue that Congress has "placed within the [primary] jurisdiction of the FDA." *Syntek*, 307 F.3d at 781; 21 C.F.R. § 10.25(b) ("FDA has *primary jurisdiction* to make the initial determination on issues within its statutory mandate.") (emphasis added); 21 U.S.C. § 348 (addressing food additives). <u>Third</u>, the regulation of PHOs as a food additive is indisputably subject to the comprehensive regulatory authority by the FDA. *See, e.g.*, 21 U.S.C.§ 321(s) (defining the term "food additive"; exempting substance that is "Generally Recognized As Safe" from that definition); 21 U.S.C. § 348(a) (requiring premarket approval of food additives by FDA); 21 U.S.C. § 348(c) (authorizing FDA to review food additive petitions); 80 Fed. Reg. at 34656 ("[FDA has] explicit statutory authority to review, approve, and deny food additive petitions."); 21 C.F.R. § 171.100 (FDA may promulgate "labeling or packaging requirements" for food additives). <u>Finally</u>, the FDA's evaluation of PHOs' labeling and use is an issue that requires the agency's expertise and consistent administration of the federal regulatory scheme governing food ingredients. *Cf. Fraker v. KFC Corp.*, No. 06-1284, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("To overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties."). Food additive petitions are technical documents with complex data regarding PHO composition, technical function, and safety. 21 C.F.R. § 171.1(c). The FDA has the authority and expertise to consider that data and, unlike this Court, the agency can issue resulting regulations establishing labeling requirements for PHOs as food additives (21 C.F.R. § 171.100) and establishing specific levels and conditions for PHO usage. 21 U.S.C. § 348(b); 21 C.F.R. § 171.100; 21 C.F.R.§ 171.1(c).

More generally, deference to the FDA allows for a uniform and national approach—via binding federal regulations—to the issue. This is far superior to the arbitrary regime created by case-by-case adjudications producing differing and potentially inconsistent outcomes. *Weinberger v. Bentex Pharms, Inc.*, 412 U.S. 645, 654 (1973) ("[U]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."). Thus, to the extent this Court finds any of Plaintiff's claims are not preempted, it should nonetheless abstain from adjudicating Plaintiff's claims because the FDA's continued review of stakeholder comments and additive petitions related to PHO usage render the regulation of PHOs an ongoing regulatory effort within the FDA's "special competence." *Saubers*, 39 F. Supp. 3d at 1111.

## C. Plaintiff Lacks Article III Standing.

Article III standing is a threshold issue that "determines the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Indeed, a court lacks subject matter jurisdiction to hear the claim if a plaintiff lacks the requisite standing. These principles apply equally to class actions and putative class representatives. *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Absent an actual, concrete injury to the Plaintiff, this Court lacks jurisdiction to decide his case and must dismiss it. *See DaimlerChrysler Corp.*, 547 U.S. at 341-42; *Lujan*, 504 U.S. at 560-61. Here, although the Complaint alleges trans fats are associated with various health problems, Plaintiff does not allege he has experienced any of those health problems – nor an increased risk of any of those health problems – as a result of his consumption of Crunch 'n Munch.[9] *See generally*, Compl. Instead, Plaintiff's allegations of "injury" are limited to his claim that "[h]ad

---

[9] Because the complaint does not allege that Plaintiff suffered an actual physical injury or an increased risk of injury, there is no need to address the "physical injury" ground for Article III standing. *See* Compl. *passim*. Even if such an allegation had been made, it would fail for the same reasons that similar allegations in the *Simpson* case failed. *Simpson*, 989 F. Supp. 2d at 1022. Because these allegations are immaterial, they should be stricken pursuant to Rule 12(f).

Plaintiff been aware of Defendant's false and misleading advertising tactics, he would not have purchased Crunch 'n Munch, and had Defendant not advertised it in a fraudulent manner, he would have paid less for it or not purchased it." Compl. ¶ 115.

To demonstrate economic injury, Plaintiff must show "a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of usefulness." *Simpson*, 989 F. Supp. 2d at 1022 (citing *Herrington*, 2010 WL 3448531, at *4). In *Simpson*, the plaintiff alleged she had sustained economic injury simply because she purchased the subject pizza products containing PHOs. *Id.* The court found this insufficient to establish an injury, reasoning that the plaintiff had consumed the pizza products she purchased, and "[c]onsumption is the purpose for which one purchases frozen foods. Thus, Plaintiff received the benefit of her bargain." *Id.*

Likewise, here, Plaintiff allegedly suffered economic injury simply because he purchased Crunch 'n Munch.[10] Compl. ¶ 115. This is insufficient for the reasons explained in *Simpson*. Plaintiff received the benefit of the bargain when he purchased a product he admits he "repeatedly" consumed. *Id.* ¶ 9. Plaintiff does not, nor can he, allege that ConAgra Foods failed to identify PHOs on the Crunch 'n Munch labeling, or misled him to believe the product was completely free of PHOs. Hence, he cannot reasonably claim he believed the product to be free of PHOs, and he cannot claim any economic injury based on his own choice to purchase and consume Crunch 'n Munch. *Simpson*, 989 F. Supp. 2d at 1022; *see also In re Fruit Juice Prods. Mktg. & Sales Practices Litig.,* 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because Plaintiffs are unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance." [emphasis in original]); *Koronthaly*, 374 Fed. App'x 257 at 259 (no economic harm under "benefit of the bargain" theory of injury).

---

[10] In addition, Plaintiff is only entitled to assert claims based on the products he actually purchased. There are multiple varieties and sizes of Crunch 'n Munch. Plaintiff's claims are apparently based on all Crunch 'n Munch varieties and sizes, but Plaintiff fails to allege that he has purchased or consumed all varieties and sizes. Absent such an allegation, Plaintiff's claims fail pursuant to *Iqbal/Twombley* and Article III standing grounds and should be dismissed.

Throughout Plaintiff's Complaint – and in Plaintiff's proposed class definition – Plaintiff asserts that the subject label contains the statement "0g Trans Fat." *See, e.g.*, Compl. ¶¶ 10, 68, 71, 74, 92 (putative class definition), 147.  However, this is an inaccurate and incomplete reading of ConAgra Foods' label.  In fact, the subject label states that Crunch 'n Munch contains "0g Trans Fat *__per serving__*."  *Id.* ¶ 71 (emphasis added).  Plaintiff's Complaint does not even mention the word "serving" in reference to Crunch 'n Munch a single time, and instead chooses to ignore two crucial words that are part of the label claim at issue.  Based on Plaintiff's misreading of the label, Plaintiff asserts "ConAgra falsely markets and falsely represents Crunch 'n Munch as free of trans fat."  *Id.* ¶ 6.  However, the Crunch 'n Munch label clearly applies the "0g trans fat" claim to each "serving" – not the product as a whole.  *Id.*  This is a crucial distinction because, as discussed in greater detail *supra*, the NLEA <u>requires</u> that trans fat content be disclosed per serving in 0.5g increments and specifically requires that, where trans fat content is disclosed and the content is below 0.5g per serving, the amount of trans fat shall be disclosed as "zero."

Consequently, Plaintiff's Complaint and class definition rest on a fundamental misreading of the subject label – a label which strictly complies with FDA labeling requirements governing the disclosure of trans fat content.  This alone mandates dismissal of Plaintiff's Complaint and/or his class action allegations.  It is axiomatic that where a plaintiff makes an incorrect assumption or ignores important words on a label, he has no valid claim for alleged deception.  *Weiss v. The Kroger Co.*, Case No. 2:14-cv-03780, slip op. at 3-4 (C.D. Cal. Aug. 8, 2014) (attached hereto as **Ex. B**) (Plaintiff "alleges that he was misled because he believes that the sodium content listed on the label included the sodium found on the shells and the seed.  This is an untenable allegation because the presence of the words 'edible portion' on the label means that the label obviously contemplated and communicated that there was an inedible portion of the product."); *Simpson v. Kroger Corp.*, No. BC475665, 2013 WL 5347881 (Cal. Ct. App. Sept. 25, 2013)(dismissing plaintiff's claim that she did not realize "spreadable butter" contained olive oil when olive oil was included on the label); *Hairston v. S. Beach Bev. Co.*, No. CV 12-1429-JFW, 2012 WL 1893818,

at *4 (C.D. Cal. May 18, 2012)(similar); *Rosen v. Unilever, Inc.*, No. C 09-02563 JW, 2010 WL 4807100, at *5 (N.D. Cal. May 3, 2010) (similar).

Put simply, the statement "0g Trans Fat per serving" is true (pursuant to FDA regulations), and there is no misrepresentation. Plaintiff's personal mistake in being unable to accurately read the label cannot form the basis of a lawsuit, much less a national class.[11] *Carrea*, 2011 U.S. Dist. LEXIS 6371, *14-15 (dismissing claims because plaintiff failed to show likelihood a reasonable consumer would be deceived). For this reason, Plaintiff has no standing.

### E.    Plaintiffs' Class Allegations Should Be Stricken/Dismissed On Adequacy, Typicality, And Article III Standing Grounds.

In a putative class action, a party may preemptively move to strike or dismiss class allegations before the plaintiff has requested class certification. *Bal v. New Penn Fin*., LLC, 2015 U.S. Dist. LEXIS 81559 (C.D. Cal. June 22, 2015); *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010). The Court may strike class allegations if "the complaint demonstrates that a class action cannot be maintained" because the class is unascertainable, or because the plaintiff cannot satisfy the requirements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure. *Id.*

As a threshold matter, Plaintiff's class allegations should be dismissed because each of Plaintiff's underlying claims is subject to dismissal as detailed above. Where the claims of the putative class representative fail, so must the claims of the class.[12] *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Additionally, even if one or more of Plaintiff's claims survives dismissal, Plaintiff's class allegations should be dismissed on Article III standing and adequacy grounds. Specifically, Plaintiff seeks to represent all consumers who purchased Crunch 'n Munch "in the United States"

---

[11] Accordingly, ConAgra is entitled to dismissal of the class's claims on typicality and predominance grounds.

[12] For this same reason, Plaintiff's claims are not typical of the proposed class, and as such, Plaintiff's class claims should be stricken. *See, e.g., Hannon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992).

from January 1, 2008 to present.  However, as a California resident, the law is clear that Plaintiff lacks standing to assert state law claims on behalf of non-California residents.  Indeed, the Ninth Circuit has held that "[e]ach class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).  "Where . . . a representative plaintiff is lacking for a particular state, all claims based on that state's law are subject to dismissal." *Granfield v. NVIDIA Corp.*, No. C. 11 05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012); *see also Pardini v. Unilever United States, Inc.,* 961 F. Supp. 2d 1048,1061 (N.D. Cal. 2013)(similar); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011)(similar).

Here, five of Plaintiff's seven causes of action are expressly premised on California consumer protection statutes.  Compl. ¶¶ 102-145.  Additionally, because Plaintiff is a resident of California and only alleges to have purchased Crunch 'n Munch in California, Plaintiff's express and implied warranty claims likewise sound in California law.  However, the vast majority of putative class members – those who purchased Crunch 'n Munch in any other state or territory – may only assert claims based on the laws where the transaction occurred.  *Mazza*, 666 F.3d at 594.  Thus, Plaintiff's class allegations should be dismissed because Plaintiff lacks standing to assert claims on behalf of the overwhelming majority of the putative class he seeks to represent.  Likewise, a plaintiff who lacks standing to represent class members clearly is not an adequate class representative under Rule 23 because they cannot represent the class.  *Lierboe*, 350 F.3d at 1023.  For this reason, the class action allegations in the Complaint should be stricken, or in the alternative, be limited to California only.

### F.    Certain of Plaintiffs' Other Causes of Action Also Fail For Other Reasons.

For his implied warranty claim, Plaintiff alleges that Crunch 'n Munch is unfit for its ordinary purpose of consumption because they contain PHO.  Compl. ¶ 157.  A breach of the warranty of merchantability "means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Lesirue, Inc.*, 114 Cal. App. 4th 402, 406 (2003).  This is clearly not the case here:  Crunch 'n Munch is food and it served its ordinary purpose of being eaten.  Plaintiff does not allege otherwise, but merely argues the food is not good for you.  This is

not enough to assert a breach of implied warranty claim. *See, e.g., Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *10 (N.D. Cal. Mar. 26, 2014) (dismissing implied warranty of merchantability claim where plaintiff did not allege granola bars "were not edible or contaminated"); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 27-28 (D.D.C. 2007) (similar). A "mere alleged labeling violation, in the absence of any allegation regarding the product's basic degree of fitness for ordinary use" is not sufficient to state a claim for breach of implied warranty. *Engurasoff v. Coca-Cola Co.*, 2014 U.S. Dist. LEXIS 116936 (N.D. Cal. Aug. 21, 2014). Moreover, Plaintiff had the opportunity to examine the products he purchased which were clearly labeled as containing PHO. This also is fatal to Plaintiff's claim. *See* Cal. Com. Code § 2316.

With regard to Plaintiff's causes of action under the "Unfair" prong of the UCL, this too should be dismissed. Plaintiff alleges his injury could not have easily been avoided, but the nutrition facts panel clearly indicates that Crunch 'n Munch contains PHO. Compl. ¶ 71. Moreover, Plaintiff lists a number of alternative popcorn snack products that do not contain PHO. *Id.* ¶ 75. Because Plaintiff could have easily avoided this alleged injury, he has no claim under this prong. *Daugherty v. Am. Honda Motor Corp., Inc.*, 144 Cal. App. 4th 824, 839 (2006).

## V.     CONCLUSION

For the foregoing reasons, Defendant ConAgra Foods, Inc. respectfully requests that the Court dismiss the Class Action Complaint in its entirety, with prejudice, and grant such other relief as may be just and proper.

Dated: July 23, 2015                         Respectfully submitted,

McGuireWoods LLP
/s/ Laura Coombe
A. Brooks Gresham
Laura Coombe

Angela M. Spivey (*pro hac vice*)

Attorneys for ConAgra Foods, Inc

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067-1501.

On July 23, 2015, I served the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Gregory S. Weston, Esq.
THE WESTON FIRM
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553
E-mail: greg@westonfirm.com

☒ **VIA CM/ECF ELECTRONIC FILING:** I transmitted via the Internet a true copy(s) of the above-entitled document(s) to the CM/ECF system of the U.S. District Court for the Northern District of California and concurrently caused the above-entitled document(s) to be sent to the recipient(s) listed above. The file transmission was reported as complete and a copy of the Notice of Electronic filing will be maintained with the original document in this office.

Executed on July 23, 2015, at Los Angeles, CA.

I declare under penalty of perjury under the laws of the United States of America and the laws of the State of California that the foregoing is true and correct.


/s/ Dora Barnett
Dora Barnett