1 **McGuireWoods, LLP**
A. Brooks Gresham (SBN 155954)
2 Laura Coombe (SBN 260663)
1800 Century Park East, 8th Floor
3 Los Angeles, CA  90067-1501
Telephone: 310.315.8200
4 Facsimile: 310.315.8210
bgresham@mcguirewoods.com
5 lcoombe@mcguirewoods.com

6 Angela M. Spivey (*pro hac vice*)
McGuireWoods LLP
7 1230 Peachtree Street, NE
Promenade, Suite 2100
8 Atlanta, GA  30309-3534
Telephone: 404.443.5720
9 Facsimile: 404.443.5792
aspivey@mcguirewoods.com
10
*Attorneys for Defendant ConAgra Foods, Inc.*
11

## UNITED STATES DISTRICT COURT
12
### NORTHERN DISTRICT OF CALIFORNIA
13

14

15 TROY WALKER, on behalf of himself
and all others similarly situated

16

17                    Plaintiff,

18          vs.

19 CONAGRA FOODS, INC.,

20

21                    Defendant.

22

23

24

25

26

27

28

No. 4:15-CV-02424-JSW

The Honorable Jeffrey S. White

**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:   July 8, 2016
Time:  9:00 a.m.
Courtroom:    5

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 8, 2016, at 9:00 a.m., or as soon thereafter as this matter may be heard in the courtroom of the Honorable Jeffrey S. White of the United States District Court for the Northern District of California, located in Courtroom 5, Second Floor, 1301 Clay Street, Oakland, California, Defendant ConAgra Foods, Inc. ("ConAgra") will and hereby does, move the Court, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for an order dismissing each claim for relief asserted in the First Amended Complaint for Violations of Cal. Bus. & Prof. Code §§ 17200 *et seq.* and Breach of Implied Warranty of Merchantability filed by Plaintiff Troy Walker.  ConAgra brings this motion on the grounds that:

(i)     Plaintiff's claims are preempted by federal law;

(ii)    Plaintiff lacks Article III standing to assert his claims;

(iii)   Plaintiff's breach of implied warranty of merchantability fails as a matter of law;

(iv)   Plaintiff's class allegations are deficient; and

(v)    ConAgra moves in the alternative for the Court dismiss or stay this action under the doctrine of primary jurisdiction, so that the Food and Drug Administration ("FDA") may exercise its jurisdiction, in the first instance, to resolve issues falling within its unique expertise.

ConAgra bases this motion on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all pleadings and papers filed in this action, oral argument of counsel, and any other matters that may come before the Court.

Dated: June 2, 2016                         Respectfully submitted,

McGuireWoods LLP
/s/Laura Coombe
A. Brooks Gresham
Laura Coombe

Angela M. Spivey (*pro hac vice*)

Attorneys for ConAgra Foods, Inc.

# TABLE OF CONTENTS

PAGE

I.      PLAINTIFF'S CLAIMS ARE SUBJECT TO CONFLICT PREEMPTION ......................4

        A.      FDA Has Exclusive Authority To Regulate Food Additives ................................... 4

        B.      FDA Explicitly Permits the Use Of PHOs Until June 18, 2018 ............................ 4

        C.      Recently Enacted Federal Law Explicitly Permits the Use of PHOs and
                Precludes Claims Based on PHO Usage Until June 18, 2018................................. 5

        D.      Plaintiff's Claims Conflict With the FDA's Determination and Federal Law
                and Are Therefore Preempted .................................................................................. 6

II.     PLAINTIFF'S CLAIMS ARE BARRED BY THE SAFE HARBOR DOCTRINE...........8

III.    PLAINTIFF LACKS ARTICLE III STANDING ...............................................................10

IV.     PLAINTIFF'S BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
        CLAIM FAILS AS A MATTER OF LAW ........................................................................ 13

V.      PLAINTIFF'S CLASS ALLEGATIONS ARE DEFICIENT ............................................14

VI.     ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED
        UNDER THE DOCTRINE OF PRIMARY JURISDICTION........................................... 16

VII.    CONCLUSION...................................................................................................................20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alvarez v. Chevron Corp.*
    656 F.3d 925 (9th Cir. 2011).................................................................................................9

*Ashcroft v. Iqbal*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................................3, 11

*Astiana v. Hain Celestial Grp., Inc.*
    783 F.3d 753 (9th Cir. 2015)...........................................................................................19

*Backus v. General Mills, Inc.*
    122 F. Supp. 3d 909 ...........................................................................................13, 14, 19

*Backus v. Nestle USA, Inc.*
    No. 15-cv-1963 MMC, 2016 U.S. Dist. LEXIS 29669 (N.D. Cal. Mar. 8, 2016)
    ("*Backus* Order")...................................................................................................6, 8

*Bal v. New Penn Fin.*
    LLC, 2015 U.S. Dist. LEXIS 81559 (C.D. Cal. June 22, 2015) .................................14

*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696 (9th Cir. 1990)............................................................................................3

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................................3

*Bohac v. Gen. Mills, Inc.*
    2014 U.S. Dist. LEXIS 41454 (N.D. Cal. Mar. 26, 2014) .........................................13

*Clark v. Time Warner Cable*
    523 F.3d 1110 (9th Cir. 2008).................................................................................16, 17

*Davel Commc'ns, Inc. v. Qwest Corp.*
    460 F.3d 1075 (9th Cir. 2006)........................................................................................17

*Davis v. HSBC Bank Nev., N.A.*
    691 F.3d 1152 (9th Cir. 2012)..........................................................................................9

*Ebner v. Fresh, Inc.*
    2013 WL 9760035 (C.D. Cal. Sept. 11, 2013)..............................................................9

*Fraker v. KFC Corp.*
    No. 06-1284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007).......................................18

*Geier v. Am. Honda Motor Co.*
    529 U.S. 861 (2000) ................................................................................7, 8

*Granfield v. NVIDIA Corp.*
    No. C. 11 05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) .........................15

*Hannon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992)...................................................................................15

*Hoyte v. Yum! Brands, Inc.*
    489 F. Supp. 2d 24 (D.D.C. 2007) .........................................................................13

*In re Celexa and Lexapro Mktg. and Sales Practices Litig.*
    2014 WL 866571 (D. Mass. Mar. 5, 2014) ..............................................................9

*In re Fruit Juice Prods. Mktg. & Sales Practices Litig.*
    831 F. Supp. 2d 507 (D. Mass. 2011) .....................................................................12

*In re Toyota Motor Corp.*
    785 F. Supp. 2d 883 (C.D. Cal. 2011) ....................................................................15

*Insolia v. Philip Morris Inc.*
    128 F. Supp. 2d 1220 (W.D. Wis. 2000)...................................................................7

*Int'l Paper Co. v. Ouellette*
    479 U.S. 481 (1987) ...................................................................................................7

*Koronthaly v. L'Oreal USA, Inc.*
    2008 WL 2938045 (D.N.J. July 29, 2008) .......................................................11, 13

*Larsen v. Trader Joe's Co.*
    2012 WL 5458396 (N.D. Cal. Jun. 14, 2012) ........................................................10

*Lewis v. Casey*
    518 U.S. 343 (1996) .................................................................................................10

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (U.S. 1992) .....................................................................................3, 10

*Maryland v. Louisiana*
    451 U.S. 725 (1981) ...................................................................................................6

*Mazza v. Am. Honda Motor Co., Inc.*
    666 F.3d 581 (9th Cir. 2012) ...................................................................................15

*McDaniel v. Wells Fargo Invs.*
    LLC, 717 F.3d 668 (9th Cir. 2013) ...........................................................................3

*McGee v. Diamond Foods, Inc.*
    No. 14cv2446 JAH, 2016 U.S. Dist. LEXIS 26484 (S.D. Cal. Mar. 1, 2016)..............11, 12, 14

iii

*O'Shea v. Littleton*
    414 U.S. 488 (1974) ....................................................................................15

*Pardini v. Unilever United States, Inc.*
    961 F. Supp. 2d 1048,1061 (N.D. Cal. 2013) ...........................................15

*Pence v. Andrus*
    586 F.2d 733 (9th Cir. 1978)......................................................................15

*Red v. General Mills, Inc.*
    No. 15-cv-02232-ODW (JPR), 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015) ............13, 14, 19

*Saubers v. Kashi Co.*
    39 F. Supp. 3d 1108 ..........................................................................1, 17, 20

*Simpson v. California Pizza Kitchen, Inc.*
    989 F. Supp. 2d 1015 (S.D. Cal. 2013) ...............................................11, 12

*Spokeo, Inc. v. Robins*
    __ S.Ct. __, 2016 U.S. LEXIS 3046 (May 16, 2016) ................................11

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001)........................................................................3

*Stewart v. United States Bancorp*
    297 F.3d 953 (9th Cir. 2002)........................................................................3

*Swearingen v. Yucatan Foods, L.P.*
    59 F. Supp. 3d 961 ......................................................................................19

*Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*
    307 F.3d 775 (9th Cir. 2002)...................................................16, 17, 18, 19

*Taylor AG Indus. V. Pure-Gro*
    54 F.3d 555 (9th Cir. 1995)........................................................................14

*Tietsworth v. Sears, Roebuck and Co.*
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ....................................................14

*Turek v. Gen. Mills*
    662 F.3d 423 (7th Cir. 2011)........................................................................4

*Valle-Ortiz v. R.J. Reynolds Tobacco Co.*
    385 F. Supp. 2d 126 (D.P.R. 2005) .............................................................7

*Walker v. B&G Foods, Inc.*
    No. 15-cv-03772-JST, 2016 U.S. Dist. LEXIS 15194 (N.D. Cal. Feb. 8, 2016)......................18

*Warth v. Seldin*
    422 U.S. 490 (1975) ....................................................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

*Weinberger v. Bentex Pharms, Inc.*
  412 U.S. 645 (1973) ...................................................................................18

*Wilson v. Frito-Lay N. Am., Inc.*
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................................................10

**California Cases**

*Aron v. U-Haul Co. of Cal.*
  143 Cal. App. 4th 796 (2006)......................................................................9

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*
  20 Cal. 4th 163 (1999)................................................................................9

*Daugherty v. Am. Honda Motor Corp., Inc.*
  144 Cal. App. 4th 824 (2006)....................................................................14

*Lazar v. Hertz Corp.*
  69 Cal. App. 4th (1999)...............................................................................9

*Mocek v. Alfa Lesirue, Inc.*
  114 Cal. App. 4th 402 (2003)....................................................................13

**Federal Statutes**

21 U.S.C. ........................................................................................4, 16, 17, 18

**California Statutes**

Cal. Com. Code § 2316 ...............................................................................14

**Other Authorities**

21 C.F.R. ........................................................................................4, 16, 17, 18

80 Fed. Reg. ..........................................................................5, 8, 9, 16, 17, 18

H.R. 2029 .................................................................................................1, 5, 6

Rule 12(b)(6) ...................................................................................................3

Rule 23 .....................................................................................................15, 16

U.S. CONST. Article VI ................................................................................6

U.S. CONST. Article III...............................................2, 3, 10, 11, 12, 13, 15

1

## SUMMARY OF ARGUMENT

ConAgra manufactures and sells a caramel popcorn snack under the brand name Crunch 'n Munch®.  First Am. Compl. ("FAC") ¶ 4.  Plaintiff alleges that Crunch 'n Munch contains artificial trans fat because it contains partially hydrogenated oil ("PHO").  *Id.* at ¶¶4-5.  The crux of Plaintiff's claim is that Crunch 'n Munch cannot be legally marketed or sold under California law because it contains trans fat – a position in direct conflict with controlling federal law.  Significantly, both the FDA and Congress have made clear that companies are legally permitted to manufacture, produce, market, and sell products containing PHO and artificial trans fat.  First, on June 17, 2015, the FDA published its final determination that PHO may be used and marketed in any food products for at least the next three years, until June 18, 2018.  Then, on December 18, 2015, President Obama signed into law the Consolidated Appropriations Act for 2016 (H.R. 2029) ("CAA") expressly precluding claims based on PHO usage like this one.  In light of the federal regulatory and legislative framework, claims challenging the use of PHOs are preempted by federal law.

In addition to being preempted, Plaintiff's Unfair Competition Law (UCL) and breach of implied warranty of merchantability claims fail for a myriad of reasons.  **First**, for the same reasons that Plaintiff's claims are preempted, they are also barred by the safe harbor doctrine.  **Second**, Plaintiff lacks standing because he has not sufficiently alleged any injury in fact.  **Third**, Plaintiff's breach of implied warranty of merchantability claim fails as a matter of law, because he has not plausibly alleged that Crunch 'n Munch was unfit to eat and a reasonable inspection of the product would have alerted Plaintiff to the presence of PHO.  **Finally**, Plaintiff's class allegations are deficient and should therefore be stricken or dismissed.  **Alternatively**, all of Plaintiff's claims should be dismissed under the doctrine of primary jurisdiction in light of the FDA's ongoing regulatory efforts regarding the use of PHOs and trans fat content.  *Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108, 1111 (S.D. Cal. 2014).

**DEFENDANT CONAGRA FOODS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

**STATEMENT OF ISSUES TO BE DECIDED**

1.   Are Plaintiff's claims preempted by federal law expressly allowing the manufacture, production, marketing, and sell of products containing PHO and artificial trans fat?

2.   Does Plaintiff lack Article III standing because he has not pled a viable injury in fact?

3.   Should Plaintiff's breach of implied warranty of merchantability claim be dismissed as a matter of law?

4.   Should Plaintiff's class claims be dismissed on standing and various other grounds?

5.   Should this Court dismiss Plaintiff's claims and/or stay this action under the doctrine of primary jurisdiction?

**STATEMENT OF RELEVANT FACTS[1]**

ConAgra manufactures and sells a caramel popcorn snack under the brand name Crunch 'n Munch®, which Plaintiff purchased and consumed a number of times.  FAC ¶¶ 4, 63-64.  Plaintiff alleges that Crunch 'n Munch contains some trans fat in the form of PHO.  *Id.* at ¶¶4-5.  Plaintiff also alleges that PHO is harmful and can contribute to the development of a number of health problems, including cardiovascular heart disease, diabetes, cancer, and Alzheimer's disease, because there is no safe level of trans fat intake.  *Id.* at ¶¶ 17-18.  As a result, Plaintiff contends that ConAgra's continued use of PHO violates public policy and renders the product adulterated under federal law.  *Id.* at ¶¶ 74-75, 77.  Based upon these allegations, Plaintiff asserts UCL claims under both the unfair and unlawful prongs as well as a breach of implied warranty merchantability claim.  *Id.* at ¶¶ 107-130.  Additionally, Plaintiff seeks to represent a national class of individuals who purchased Crunch' n Munch for personal use on or after January 1, 2008.  *Id.* at ¶ 97.

---

[1] The facts in this section are alleged in Plaintiff's First Amended Complaint and are accepted as true only for the purposes of this motion to dismiss.

Notably, Plaintiff conveniently ignores the fact the FDA published its final determination that PHO may be used and marketed in any food products for at least the next three years, until June 18, 2018.  He likewise ignores the passage of the CCA expressly precluding claims based on the use of PHO until that time.

## LEGAL STANDARD

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Accordingly, dismissal is appropriate under Rule 12(b)(6) in instances where a state law claim is preempted by federal law. *See Stewart v. United States Bancorp*, 297 F.3d 953, 955 (9th Cir. 2002); *McDaniel v. Wells Fargo Invs.*, LLC, 717 F.3d 668, 672 (9th Cir. 2013). To avoid dismissal under Rule 12(b)(6), a plaintiff must also state more than conclusions or recite elements of causes of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  While the Court must accept material allegations and make reasonable inferences from them, it need not accept conclusory allegations or legal conclusions, or make unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Finally, under Article III of the U.S. Constitution, the federal courts may decide only actual "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (U.S. 1992).  To have standing to sue in federal court, a plaintiff must show, *inter alia*, that he has suffered an actual, concrete, and particularized injury in fact, and that there is a causal connection between the alleged injury and the challenged conduct such that the injury is fairly traceable to that conduct. *Lujan*, 504 U.S. at 560-61.  The party invoking federal jurisdiction has the burden of establishing these elements and must clearly plead each element. *Id.* at 561.

1  **ARGUMENT AND CITATION TO AUTHORITY**

2  **I.      PLAINTIFF'S CLAIMS ARE SUBJECT TO CONFLICT PREEMPTION.**

3  **A.      FDA Has Exclusive Authority To Regulate Food Additives.**

4  Congress has specifically delegated to the FDA the duty and quasi-legislative power to

5  administer the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*; *see, e.g.,*

6  *Turek v. Gen. Mills*, 662 F.3d 423, 426 (7th Cir. 2011).  Congress and the FDA have established

7  uniform national requirements and comprehensive federal regulatory systems to ensure food safety

8  through the FDCA, as amended by the Nutritional Labeling & Education Act ("NLEA") (Public

9  Law 101-535, 104 Stat. 2352, Nov. 8, 1990), and the implementing regulations (21 C.F.R. § 1.1, *et*

10  *seq.*, § 101, *et seq.*).

11  Under the Food Additives Amendment Act of 1958, the FDA regulates "food additives,"

12  which are defined broadly to include any substance that can "be expected to result, directly or

13  indirectly, in its becoming a component or otherwise affecting the characteristics of any food."

14  21 U.S.C. § 321(s). Food additives must receive FDA premarket approval before being used in

15  food. 21 U.S.C. § 348.   Substances that are "Generally Recognized as Safe" (GRAS) are

16  specifically exempt from the food additives definition.  *Id.*  Significantly, GRAS status is not

17  accorded to a substance, but to particular uses of a substance.  *Id.*  For uses of substances that do

18  not have GRAS status, the FDA has implemented a petition process through which it considers

19  whether a food additive is safe for a particular purpose.  21 U.S.C. § 348(b).  When a petition for a

20  particular use of a food additive is granted, a regulation is established that prescribes the

21  circumstances under which the substance may be used.  21 U.S.C. § 348(c)(1)(A).

22  **B.      FDA Explicitly Permits the Use Of PHOs Until June 18, 2018.**

23  On June 17, 2015, the FDA published its final determination that, although PHO is no

24  longer GRAS, it may be used in any food products for at least the next three years, until June 18,

25  2018. Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650-01

26  (June 17, 2015).   The Final Determination explicitly acknowledges that FDA will undertake

27  review of any petitions for PHO to be used as a food additive.  If granted, such petitions would

28  permit the use of PHO beyond the June 2018 date.  *Id.*  FDA's determination came after a 19-

4

month review process during which the FDA solicited comments from the public and requested data and scientific information regarding PHO and its use in food.  *Id.* at 34650-51.  As part of that process, the FDA received and reviewed over 6,000 comments from consumer and advocacy groups, industry and trade associations, health professionals, and governments.  *Id.* at 34651.

Although some of the comments—including a comment submitted by Plaintiff's counsel— requested that the FDA not grant any transition period and immediately and forever ban the use of PHO, the FDA determined that (a) such a period was necessary and important, and (b) an absolute ban following the transition period may not be necessary after consideration of food additive petitions.  *Compare* 80 Fed. Reg. at 34668-69, *with* Dkt. No. 19-4 (Comment from Gregory Weston, The Weston Firm, RE: Agency/Docket No. FDA 2013-N-1317, received April 14, 2015). The FDA explicitly addressed comments that opposed a transition period, noting that the period is designed to accomplish several important goals: (1) minimize market disruptions by providing sufficient time to identify replacement ingredients, exhaust existing inventories, reformulate products, and modify labeling; (2) provide sufficient time for the growing, harvesting, and processing of new varieties of edible oilseeds to meet the expected demands for alternative oil products; and (3) provide sufficient time for submission and review of food additive petitions that would allow for the use of PHO after June 18, 2018, as a food additive.  *Id.*

### C.  Recently Enacted Federal Law Explicitly Permits the Use of PHOs and Precludes Claims Based on PHO Usage Until June 18, 2018.

On December 18, 2015, President Obama signed into law the Consolidated Appropriations Act for 2016 (H.R. 2029) ("CAA") expressly precluding suits such as the instant case.[2]  The bill clarifies that no suits over trans fat use may be brought until at least June 18, 2018 when the three-year phase-out period ordered by the FDA has run.  That law states, in relevant part,

> No partially hydrogenated oils as defined in the order published by the Food and
>
> Drug Administration in the Federal Register on June 17, 2015 (80 Fed. 14 Reg.

---

[2] Congressional record of the President's Signature to H.R. 2029 on December 18, 2015, available at https://www.congress.gov/bill/114th-congress/house-bill/2029/all-actions?overview=closed.  This document shows that President Obama signed H.R. 2029.

1    34650 et seq.) shall be deemed unsafe within the meaning of section 409(a) and no

2    food that is introduced . . . into interstate commerce that bears or contains a

3    partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) or

4    402(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil until

5    the compliance date as specified in such order (June 18, 2018).

6    H.R. 2029, Div. A. Title VII, Section 754.[3]

7    As a court in this district addressing similar claims recently held, with the passage of the

8    CAA, "both the FDA and Congress have spoken" and allowing PHO litigation to continue "would

9    effectively negate the FDA's order setting a compliance date in 2018 and stand as an obstacle to

10   the accomplishment and execution of the full purposes and objectives of the FDA in adopting that

11   order."  *Backus v. Nestle USA, Inc.*, No. 15-cv-1963 MMC, 2016 U.S. Dist. LEXIS 29669, at *9

12   (N.D. Cal. Mar. 8, 2016) ("*Backus* Order").

13       **D.       Plaintiff's Claims Conflict With the FDA's Determination and Federal Law**

14               **and Are Therefore Preempted.**

15       Under the Supremacy Clause of the U.S. Constitution, conflicts that arise between state

16   and federal law must be resolved in favor of federal law. *See* U.S. CONST. art. VI, cl. 2;

17   *Maryland v. Louisiana*, 451 U.S. 725, 746-47 (1981).  This suit seeks to make it ***immediately***

18   ***unlawful*** to market or sell any food product that contains PHO in California notwithstanding (1)

19   federal legislation clearly stating that food products containing PHOs shall not be deemed unsafe

20   until at least June 18, 2018 and (2) the FDA's determination that food products may contain PHO

21   until at least June 18, 2018 and that FDA should make petition-by-petition determinations about

22   proposed uses of PHO.  Accordingly, Plaintiff's claims are barred by conflict preemption because,

23   if successful, they would conflict with federal law and FDA's regulatory objectives.

24

25

---

26   [3] H.R. 2029, Military Construction and Veterans Affairs and Related Agencies Appropriations

27   Action, 2016, available at http://docs.house.gov/billsthisweek/20151214/CPRT-114-HPRT-RU00-
     SAHR2029-AMNT1final.pdf.  This document is 2009 pages.  The quoted language is contained in

28   Div. A. Title VII, Section 754.

1    State law may not be used to ban a product when, as here, an expert federal regulatory

2    agency has specifically approved the use of the product for a particular period or has chosen to

3    regulate rather than prohibit its use.  Otherwise, civil liability would erect an obstacle to the

4    accomplishment of the comprehensive and carefully calibrated federal regulatory program. *See,*

5    *e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000) (federal law requiring some

6    new cars to employ passive-restraint systems preempted state tort claims that would have had the

7    effect of requiring auto manufacturers to install air bags in all new cars); *Valle-Ortiz v. R.J.*

8    *Reynolds Tobacco Co.*, 385 F. Supp. 2d 126, 133 (D.P.R. 2005); *Insolia v. Philip Morris Inc.*, 128

9    F. Supp. 2d 1220, 1223-24 (W.D. Wis. 2000).

10    "The [Supreme] Court held [in *Geier*] that it would conflict with the government's policy

11    choices to allow tort suits against automobile manufacturers for their failure to install air bags

12    when their decisions had been made in compliance with" a federal policy that did not require air

13    bags but instead allowed manufacturers to make choices about which safety devices to employ.

14    *Insolia*, 128 F. Supp. 2d at 1224.  The Supreme Court explained that when, as here, "Congress has

15    delegated to [a federal agency the] authority to implement [a] statute; the subject matter is

16    technical; and the relevant history and background are complex and extensive[, t]he agency is

17    likely to have a thorough understanding of its own regulation and its objectives and is 'uniquely

18    qualified' to comprehend the likely impact of state requirements."  *Geier*, 529 U.S. at 883.

19    Allowing state law liability to foreclose options that federal regulators meant to leave open

20    necessarily "upset[s] the balance of public and private interests so carefully addressed by" the

21    regulators. *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).  For that reason, "state law . . .

22    is pre-empted if it interferes with the methods by which [a] federal statute was designed to reach [a

23    federal regulatory] goal."  *Id.*

24    In other words, when an expert federal agency (such as the FDA) adopts a regulatory

25    policy that leaves room for manufacturing choices, and especially when, as here, that agency

26    explicitly deems the complained-of choice to be permissible (*i.e.*, continuing to use PHO), "a rule

27    of state tort law imposing . . . a duty" that the agency has declined to adopt "would [stand] as an

28    obstacle to the gradual . . . phase-in that the federal regulation deliberately imposed."  *Geier*, 529

7

1   U.S. at 881.  As detailed above, the FDA explicitly considered immediately banning PHO use and
2   the agency rejected that option in favor of a three-year phase-out period (80 Fed. Reg. 34650).
3   This regulatory process recognizes the FDA's expert determination that requiring immediate
4   removal of PHO from food products would have undesirable consequences.

5          As the Honorable Maxine M. Chesney of the Northern District of California recently held
6   in *Backus v. Nestle USA, Inc.* – a similar PHO putative class action brought by the same Plaintiff's
7   counsel – what Plaintiff seeks to do is no different from what the Plaintiffs in *Geier* sought by
8   attempting to impose civil liability in order to compel automakers to install airbags in all cars even
9   though the responsible federal regulator had reached a different policy.  2016 U.S. Dist. LEXIS
10  29669, at *10-11 (*citing Geier* and granting motion to dismiss PHO lawsuit on conflict preemption
11  grounds).  In *Backus* – like in this case – Plaintiff challenged the use of PHO in a food product.
12  *Id.* at *2.  As the Court noted, the operative FDA Order expressly "encourage[d] submission of
13  scientific evidence as part of food additive petitions under section 409" for "one or more specific
14  uses of PHOs" and set a "compliance date" of June 18, 2018, "to allow time for such petitions and
15  their review." *Id.* at *7.  The Court further noted that Congress had passed and the President
16  signed into law the CAA, which, in relevant part mandates that no product "shall be deemed
17  unsafe" or "adulterated" until the compliance date (June 18, 2018) set by the FDA.  *Id.* at *8-9
18  (*citing* CAA).  That is precisely what Plaintiff seeks to do here.  As the *Backus* Court noted,
19  where, as here, "both the FDA and Congress have spoken, the case for conflict preemption takes
20  on added strength."  *Id.* at *9.  Thus, in light of this legislative and regulatory framework, the
21  Court found that Backus's claims were preempted because they would effectively negate the
22  FDA's order setting a compliance date in 2018 and stand as an obstacle to the accomplishment
23  and execution of the full purposes and objectives of the FDA in adopting that order.  *Id.*  This
24  Court should reach the same conclusion here.

25  **II.     PLAINTIFF'S CLAIMS ARE BARRED BY THE SAFE HARBOR DOCTRINE**

26         The safe harbor doctrine applies with full force here for the same reasons that conflict
27  preemption bars the claims.  California's safe harbor doctrine provides that if legislation has
28  permitted certain conduct or considered a situation and concluded that no action should lie, courts

may not override that determination. *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 803-04 (2006).  The safe harbor doctrine applies when a plaintiff attacks practices that comply with FDA regulations.  *See, e.g., Ebner v. Fresh, Inc.*, 2013 WL 9760035, at *4-6 (C.D. Cal. Sept. 11, 2013) (applying safe harbor to dismiss claims because defendant's labeling practices complied with FDA regulations); *In re Celexa and Lexapro Mktg. and Sales Practices Litig.*, 2014 WL 866571, at *3-5 (D. Mass. Mar. 5, 2014).  Courts have likewise applied the safe harbor doctrine to dismiss UCL claims.  *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 933-34 (9th Cir. 2011)(affirming district court's dismissal of plaintiff's UCL and CLRA claims pursuant to California's safe harbor doctrine because "courts may not use the unfair competition law to condemn action the Legislature permits."); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 183 (1999)("Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law.")  Indeed, "[a] business practice cannot be unfair if it is permitted by law."  *Lazar v. Hertz Corp.*, 69 Cal. App. 4th, 1494, 1505 (1999).  In other words, the safe harbor doctrine protects specific conduct not because of its provenance, but because the content of the conduct itself is deemed 'fair' as a matter of law."  *Davis v. HSBC Bank Nev.*, *N.A.*, 691 F.3d 1152, 1166 (9th Cir. 2012).

The FDA has explicitly determined that PHO containing food may be marketed and sold until at least June 18, 2018. 80 Fed. Reg. 34650.  Moreover, Congress, by virtue of the CAA, has expressly provided that no food product containing PHOs "shall be deemed unsafe" or "adulterated" until the June 18, 2018 compliance date set by the FDA.  ConAgra is in compliance with those determinations, which Plaintiff's tort claims cannot override.  Therefore, the claims are barred.

### III.   PLAINTIFF LACKS ARTICLE III STANDING[4]

Both Article III and state law require Plaintiff to demonstrate his standing to assert the claims alleged in the complaint.  Article III standing is a threshold issue that "determines the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  Indeed, a court lacks subject matter jurisdiction to hear the claim if a plaintiff lacks the requisite standing. These principles apply equally to class actions and putative class representatives. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  To allege Article III standing, a plaintiff must plead (1) "injury in fact," (2) causation, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  As discussed in *Lujan*, "[t]here must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61.  Absent an actual, concrete injury to the plaintiff, this Court lacks jurisdiction to decide his case and must dismiss it.  *See DaimlerChrysler Corp.*, 547 U.S. at 341-42; *Lujan*, 504 U.S. at 560-61.

First, Plaintiff alleges that he suffered physical injury because he consumed artificial trans fat by consuming Crunch 'n Munch.  FAC ¶ 88.  However, Plaintiff's vague reference to "physical injury" is insufficient.  *Id.*  Plaintiff does not identify any symptom or adverse health condition he actually experienced.  *See generally* FAC.  Rather, Plaintiff conclusorily asserts that consumption of any amount of trans fat leads to organ damage and increases risks of certain medical conditions, and because he has eaten trans fat, he must have suffered organ damage and increased risks.  *Id.*

---

[4] In addition, Plaintiff is only entitled to assert claims based on the products he actually purchased.  There are multiple varieties and sizes of Crunch 'n Munch.  Plaintiff's claims are apparently based on all Crunch 'n Munch varieties and sizes, but Plaintiff fails to allege that he has purchased or consumed all varieties and sizes.  Absent such an allegation, Plaintiff's claims fail pursuant to *Iqbal/Twombly* and Article III standing grounds and should be dismissed.  *See, e.g., Lujan*, 504 U.S. at 560-61; *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at * 5 (N.D. Cal. Jun. 14, 2012).  While some courts view the issue as one of whether the non-purchased products are substantially similar to those the Plaintiff purchased, there are no factual allegations in the complaint that support a conclusion that all of the products Plaintiff is challenging in this action are substantially similar.  *See, e.g., Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1140-44 (N.D. Cal. 2013).

1  But the Supreme Court has held in no uncertain terms that a plaintiff cannot conclusorily assert a

2  defendant has harmed him without factual allegations demonstrating the existence of such harm.

3  *Iqbal*, 556 U.S. at 678 (complaint must contain "more than an unadorned, the-defendant-

4  unlawfully-harmed-me accusation").  Indeed, the United States Supreme Court recently reaffirmed

5  that "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a

6  legally protected interest that is concrete and particularized …."  *Spokeo, Inc. v. Robins*, __ S.Ct.

7  __, __, 2016 U.S. LEXIS 3046, at *13 (May 16, 2016)(internal quotations and citation

8  omitted).  For an injury to be concrete, "it must actually exist."  *Id.* at *14.  Moreover, where the

9  theory of injury is a risk of harm, such allegations are "too remote and abstract to qualify as a

10  concrete and particularized injury" sufficient to confer Article III standing.  *Koronthaly v. L'Oreal*

11  *USA, Inc.*, 2008 WL 2938045, at *5 (D.N.J. July 29, 2008).  To demonstrate standing based on

12  exposure to a dangerous substance, Plaintiff would have to demonstrate both "(i) a substantially

13  increased risk of harm and (ii) a substantial probability of harm with that increase taken into

14  account."  *Simpson v. California Pizza Kitchen, Inc.,* 989 F. Supp. 2d 1015, 1022 (S.D. Cal. 2013).

15       Applying this reasoning, the district court in *McGee v. Diamond Foods, Inc.*, No.

16  14-cv-2446-JAH, 2016 U.S. Dist. LEXIS 26484 (S.D. Cal. Mar. 1, 2016) concluded that the

17  Plaintiff lacked Article III standing because she did not satisfy either of these requirements.

18  Notably, much like the instant case, the Plaintiff in *McGee* "allege[d] that she suffered physical

19  injury when she repeatedly consumed Defendant's popcorn because consuming [trans fat] in any

20  quantity causes inflammation and damage to vital organs and an increased risk of heart disease,

21  diabetes, cancer, and death."  *Id.* at *11.  The court concluded these allegations of "physical

22  injury" were insufficient, because "[p]laintiff attempt[ed] to forecast a future, not present, injury

23  and have this [c]ourt accept a bodily response to consumption as concrete evidence that significant

24  diseases will develop."  *Id.*  The court found this to be speculative because the Plaintiff "allege[d]

25  she [was] at risk [for] develop[ing] different diseases without identifying which one she is

26  specifically susceptible to developing" and because none of the studies cited in the complaint

27  "state[d] the persons suffering from inflamed organs from [trans fat] consumption will develop

28  one of the enumerated diseases."  *Id.*  Consequently, the court found that Plaintiff had not alleged

1  any injury in fact establishing Article III standing.  Because Plaintiff's allegations are practically

2  identical, the same result is warranted is here.

3       Second, Plaintiff's contention that he suffered an economic injury likewise fails to

4  establish Article III standing.  Specifically, Plaintiff alleges that he "lost money" because "[h]ad

5  Defendant not violated the law, Plaintiff would not have been able to purchase" the product which

6  was "detrimental to his health."  FAC ¶ 87.  To demonstrate economic injury, Plaintiff must show

7  "a loss of the plaintiff's benefit of the bargain, such as by overpayment, loss in value, or loss of

8  usefulness."  *Simpson*, 989 F. Supp. 2d at 1022.  In *Simpson*, the plaintiff similarly alleged she had

9  sustained economic injury simply because she purchased the subject pizza products containing

10  PHOs.  *Id.*  The court found this insufficient to establish an injury, reasoning that the Plaintiff had

11  consumed the pizza products she purchased, and "[c]onsumption is the purpose for which one

12  purchases frozen foods.  Thus, Plaintiff received the benefit of her bargain."  *Id.*   The district

13  court in *McGee* reached a similar conclusion where Plaintiff alleged that she suffered an economic

14  injury because "she purchased a product that was less healthy than expected."  2016 U.S. Dist.

15  LEXIS 26484, at * 19.  The court stated that it "agree[d] with the *Simpson* court that consumption

16  is the purpose for which consumers purchase food products and plaintiff received the benefit of

17  her bargain from the purchase of Defendant's popcorn once she consumed the popcorn….

18  Therefore, Plaintiff has not alleged an economic injury which satisfies UCL or Article III standing

19  requirements."  *Id.*

20       Likewise, here, Plaintiff allegedly suffered economic injury simply because he purchased

21  Crunch 'n Munch.  FAC ¶ 87.  This is insufficient for the reasons explained in *Simpson*.  Plaintiff

22  received the benefit of the bargain when he purchased a product he admits he "repeatedly"

23  consumed.   *Id*. ¶ 63.  Plaintiff does not, nor can he, allege that ConAgra Foods failed to identify

24  PHOs on the Crunch 'n Munch labeling, or misled him to believe the product was completely free

25  of PHOs.  Hence, he cannot reasonably claim he believed the product to be free of PHOs, and he

26  cannot claim any economic injury based on his own choice to purchase and consume Crunch 'n

27  Munch.  *Simpson*, 989 F. Supp. 2d at 1022; *see also In re Fruit Juice Prods. Mktg. & Sales*

28  *Practices Litig.,* 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because Plaintiffs are unable to show

that *any* actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance." [emphasis in original]); *Koronthaly*, 374 Fed. App'x 257 at 259 (no economic harm under "benefit of the bargain" theory of injury). Because Plaintiff fails to sufficiently plead any physical injury or economic injury, he lacks Article III standing.

## IV.    PLAINTIFF'S BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CLAIM FAILS AS A MATTER OF LAW

For his implied warranty claim, Plaintiff alleges that Crunch 'n Munch is unfit for its ordinary purpose of consumption because it contains PHO. FAC ¶ 116. A breach of the warranty of merchantability "means the product did not possess even the most basic degree of fitness for ordinary use." *Mocek v. Alfa Lesirue, Inc.*, 114 Cal. App. 4th 402, 406 (2003). "A breach of the warranty of merchantability occurs if the product lacks even the most basic degree of fitness for ordinary use. In the context of food cases, a party can plead that a product violates the implied warranty of merchantability by alleging, for example, that the product was not safe for consumption, or that the product was contaminated or contained foreign objects." *Red v. General Mills, Inc.*, No. 15-cv-02232-ODW (JPR), 2015 WL 9484398 at *6 (C.D. Cal. Dec. 29, 2015)(internal quotations and citations omitted). Concluding that the inclusion of PHO in the mashed potato product did not render it unfit, the district court in Red was "not convinced that the warranty of merchantability covers the allegations in this lawsuit." *Id*,

This is also the case here: Crunch 'n Munch is food and it served its ordinary purpose of being eaten. Plaintiff does not allege otherwise, but merely argues the food is not good for you. This is not enough to assert a breach of implied warranty claim. *See, e.g., Bohac v. Gen. Mills, Inc.*, 2014 U.S. Dist. LEXIS 41454, *10 (N.D. Cal. Mar. 26, 2014) (dismissing implied warranty of merchantability claim where plaintiff did not allege granola bars "were not edible or contaminated"); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 27-28 (D.D.C. 2007) (similar); *Backus v. General Mills, Inc.*, 122 F. Supp. 3d 909, 931 (N.D. Cal. 2015) (similar). Indeed, "[c]ourts in food cases have held that a label that discloses the presence of an unhealthy ingredient precludes liability under the implied warranty of merchantability." *General Mills, Inc.*, 122 F. Supp. 3d at 931. Here, the Crunch 'n Munch label discloses the presence of PHO. *See* Dkt. No. 1

13

at ¶ 71.  To the extent Plaintiff contends the risks of PHO were not sufficiently disclosed to him, this argument, too, was rejected in *General Mills*.  In addressing this argument, the court stated that "[t]his is a backdoor challenge to the sufficiency of General Mills' [labeling] and warning  to Backus, which runs headfirst into the National Labeling and education Act's express preemption of additional food labeling requirements."  *General Mills*, 122 F. Supp. 3d at 932 (citing 21 U.S.C. § 343-1(a)(3)); *see also Taylor AG Indus. V. Pure-Gro*, 54 F.3d 555, 563 (9th Cir. 1995)("We hold that Appellants' implied warranty claims are preempted by FIFRA because the asserted implied warranties operate by state law to impose labeling requirements indirectly."). In fact, this Court previously dismissed Plaintiff's "mislabeling" claims with prejudice concluding that they were expressly preempted by the federal FDCA, as amended by the NLEA. Dkt. No. 43 at 3-6. Moreover, Plaintiff had the opportunity to examine the products he purchased which were clearly labeled as containing PHO.  This is also fatal to Plaintiff's claim.  *See* Cal. Com. Code § 2316; *see also McGee*, 2016 U.S. Dist. LEXIS 26484, at * 26 (dismissing Plaintiff's breach of implied warranty of merchantability claim and noting that plaintiff had a sufficient opportunity to examine the popcorn prior to purchase).  With regard to Plaintiff's UCL claim under the "unfair" prong, it too is subject to dismissal for this reason.  Plaintiff alleges his injury could not have easily been avoided, but the nutrition facts panel clearly indicates that Crunch 'n Munch contains PHO.  *See* Dkt. No. 1 at ¶ 71.  Additionally, Plaintiff lists a number of alternative popcorn snack products that do not contain PHO.  FAC ¶ 69.  Because Plaintiff could have easily avoided this alleged injury, he has no UCL claim under this prong.  *Daugherty v. Am. Honda Motor Corp., Inc*., 144 Cal. App. 4th 824, 839 (2006).

## V.     PLAINTIFF'S CLASS ALLEGATIONS ARE DEFICIENT

In a putative class action, a party may preemptively move to strike or dismiss class allegations before the plaintiff has requested class certification.  *Bal v. New Penn Fin*., LLC, 2015 U.S. Dist. LEXIS 81559 (C.D. Cal. June 22, 2015); *Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).  The Court may strike class allegations if "the complaint demonstrates that a class action cannot be maintained" because the class is unascertainable, or

1   because the plaintiff cannot satisfy the requirements of Rules 23(a) and (b) of the Federal Rules of

2   Civil Procedure.  *Id.*

3       As a threshold matter, Plaintiff's class allegations should be dismissed because each of

4   Plaintiff's underlying claims is subject to dismissal as detailed above.  Where the claims of the

5   putative class representative fail, so must the claims of the class.  *Pence v. Andrus*, 586 F.2d 733,

6   736-37 (9th Cir. 1978); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  For this same

7   reason, Plaintiff's claims are not typical of the proposed class, and as such, Plaintiff's class claims

8   should be stricken.  *See, e.g., Hannon v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992).

9       Additionally, even if one or more of Plaintiff's claims survives dismissal, Plaintiff's class

10  allegations should be dismissed on Article III standing and adequacy grounds.  Specifically,

11  Plaintiff seeks to represent all consumers who purchased Crunch 'n Munch "in the United States"

12  from January 1, 2008 to present.  However, as a California resident, the law is clear that Plaintiff

13  lacks standing to assert state law claims on behalf of non-California residents.  Indeed, the Ninth

14  Circuit has held that "[e]ach class member's consumer protection claim should be governed by the

15  consumer protection laws of the jurisdiction in which the transaction took place."  *Mazza v. Am.*

16  *Honda Motor Co., Inc.*, 666 F.3d 581, 594 (9th Cir. 2012).  "Where . . . a representative plaintiff is

17  lacking for a particular state, all claims based on that state's law are subject to dismissal."

18  *Granfield v. NVIDIA Corp.*, No. C. 11 05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11,

19  2012); *see also Pardini v. Unilever United States, Inc.,* 961 F. Supp. 2d 1048,1061 (N.D. Cal.

20  2013)(similar); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011)(similar).

21      Here, two of Plaintiff's three causes of action are expressly premised on California

22  consumer protection statutes.  FAC ¶¶ 107-113, 120-130.  Additionally, because Plaintiff is a

23  resident of California and only alleges to have purchased Crunch 'n Munch in California,

24  Plaintiff's implied warranty claim likewise sounds in California law.  However, the vast majority

25  of putative class members – those who purchased Crunch 'n Munch in any other state or territory

26  – may only assert claims based on the laws where the transaction occurred.  *Mazza*, 666 F.3d at

27  594.  Thus, Plaintiff's class allegations should be dismissed because Plaintiff lacks standing to

28  assert claims on behalf of the overwhelming majority of the putative class he seeks to represent.

1  Likewise, a plaintiff who lacks standing to represent class members clearly is not an adequate

2  class representative under Rule 23 because they cannot represent the class.  *Lierboe*, 350 F.3d at

3  1023.  For this reason, the class action allegations in the Complaint should be stricken, or in the

4  alternative, be limited to California only.

5  **VI.   ALTERNATIVELY, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER**

6  **THE DOCTRINE OF PRIMARY JURISDICTION.**

7  If any of Plaintiff's claims survive dismissal, this Court should abstain from adjudicating

8  Plaintiff's claims under the doctrine of primary jurisdiction.  The primary jurisdiction doctrine

9  "applies in cases where there is: (1) a need to resolve an issue that (2) has been placed by

10  Congress within the jurisdiction of an administrative body having regulatory authority (3)

11  pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority

12  that (4) requires expertise or uniformity in administration." *Clark v. Time Warner Cable*, 523 F.3d

13  1110, 1115 (9th Cir. 2008); *see also Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*,

14  307 F.3d 775, 781 (9th Cir. 2002).  "[T]he primary jurisdiction doctrine is designed to protect

15  agencies possessing quasi-legislative powers… that are actively involved in the administration of

16  regulatory statutes."  *Clark*, 523 F.3d at 1115.

17  Here, the FDCA empowers the FDA to promulgate regulations for food ingredients. *See* 21

18  U.S.C. § 393(b). More specifically, the FDCA authorizes the FDA to review "food additive

19  petitions," and to promulgate regulations based on those petitions to govern the use of certain

20  ingredients in food. *See* 21 U.S.C. § 348(c)(1)(A), 21 C.F.R. § 171.100 (describing FDA's

21  authority to review food additive petitions and establish regulations prescribing "the conditions

22  under which such additive may be safely used"); *see also* 80 Fed. Reg. 34650 at 34656.  When

23  determining "the conditions under which such additive may be safely used" the regulations

24  expressly allow the FDA Commissioner to dictate "labeling or packaging requirements for such

25  additive deemed necessary by him to assure the safety of such use." 21 C.F.R. § 171.100.  On

26  June 18, 2015, the FDA issued a Declaratory Order invoking this authority to regulate PHOs via

27  the food additive petition process, in conjunction with a decision to affirm PHO's lawful status as

28  a food ingredient for at least the next three years.  *See* 80 Fed. Reg. 34650 at 34651 & 34657.

16

1    That Order expressly contemplates the FDA's continued regulation of PHOs through food additive

2    petitions and potential future labeling regulations.  *Id.*; 80 Fed. Reg. 34650, 34654 (reserving right

3    to address PHOs through future labeling regulation).[5]  For example, on October 1, 2015, the

4    Grocery Manufacturers Association's (GMA) food additive petition, FAP No. 5A4811, proposing

5    that Part 172 of 21 C.F.R. be amended to provide for the safe use of partially hydrogenated

6    vegetable oils in or on select foods, was acknowledged as having been filed by the FDA and is

7    currently the subject of a FDA scientific evaluation.  Dkt. No. 28-1.

8         Therefore, the primary jurisdiction doctrine applies here, as Plaintiff's claims implicate a

9    federal agency's expertise for a regulated product.  *See Saubers v. Kashi Co.*, 39 F. Supp. 3d 1108,

10   1111 (S.D. Cal. 2014).  Primary jurisdiction permits courts to dismiss an action pending resolution

11   "of an issue within the special competence of an administrative agency."  *Id.*; *Clark v. Time*

12   *Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).  "[C]ourts may, under appropriate

13   circumstances, determine that the initial decision-making responsibility should be performed by

14   the relevant agency rather than the courts.'"  *Davel Commc'ns, Inc. v. Qwest Corp.,* 460 F.3d

15   1075, 1086 (9th Cir. 2006) (citing *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Corp.*, 307

16   F.3d 775, 780 (9th Cir. 2002)).

17        All of the applicable factors strongly favor dismissal.  ***First***, Plaintiff's claims require this

18   Court to resolve an issue squarely within the purview of the FDA:  The labeling and use of PHOs

19   in food products.  The FDA's June 18, 2015 Order evidences the agency's active role in

20   considering these very issues.  80 Fed. Reg. 34650, 34654 (reserving right to address PHOs via

21   future labeling regulations) and 34657 (encouraging industry to submit food additive petitions

22   under section 409 of the FDCA).  ***Second***, the labeling and use of substances such as PHOs is an

23   issue that Congress has "placed within the [primary] jurisdiction of the FDA."  *Syntek*, 307 F.3d at

24   781; 21 C.F.R. § 10.25(b) ("FDA has *primary jurisdiction* to make the initial determination on

25   issues within its statutory mandate.") (emphasis added); 21 U.S.C. § 348 (addressing food

26   _____

27        [5] ConAgra makes its primary jurisdiction argument strictly in the alternative because the
     FDA's June 18th, 2015 order did not alter or amend any of the FDCA or NLEA labeling or
28   preemption provisions fatal to Plaintiff's claims.

additives).  **Third**, the regulation of PHOs as a food additive is indisputably subject to the comprehensive regulatory authority of the FDA.  *See, e.g.*, 21 U.S.C.§ 321(s) (defining the term "food additive"; exempting substance that is "Generally Recognized As Safe" from that definition); 21 U.S.C. § 348(a) (requiring premarket approval of food additives by FDA); 21 U.S.C. § 348(c) (authorizing FDA to review food additive petitions); 80 Fed. Reg. at 34656 ("[FDA has] explicit statutory authority to review, approve, and deny food additive petitions."); 21 C.F.R. § 171.100 (FDA may promulgate "labeling or packaging requirements" for food additives). **Finally**, the FDA's evaluation of PHO labeling and use is an issue that requires the agency's expertise and consistent administration of the federal regulatory scheme governing food ingredients. *Cf. Fraker v. KFC Corp.*, No. 06-1284, 2007 WL 1296571, at *4 (S.D. Cal. Apr. 30, 2007) ("To overlay the state law tort system over the FDCA would significantly increase the burdens on the FDA to ensure uniform enforcement of its administrative duties.").  Food additive petitions are technical documents with complex data regarding PHO composition, technical function, and safety.  21 C.F.R. § 171.1(c).  The FDA has the authority and expertise to consider that data and, unlike this Court, the agency can issue resulting regulations establishing labeling requirements for PHOs as food additives (21 C.F.R. § 171.100) and establishing specific levels and conditions for PHO usage. 21 U.S.C. § 348(b); 21 C.F.R. § 171.100; 21 C.F.R.§ 171.1(c). This Court reached the same conclusion in *Walker v. B&G Foods, Inc.*, No. 15-cv-03772-JST, 2016 U.S. Dist. LEXIS 15194, at * (N.D. Cal. Feb. 8, 2016).  Finding that all the *Syntek* factors applied, the Court concluded "the[] claims turn[ed] on the safety of small amounts of trans fat in [the] products, which is a question that the FDA is uniquely well-suited to answer." *Id.* at *15, 20. More generally, deference to the FDA allows for a uniform and national approach—via binding federal regulations—to the issue. This is far superior to the arbitrary regime created by case-by-case adjudications producing differing and potentially inconsistent outcomes.  *Weinberger v. Bentex Pharms, Inc.*, 412 U.S. 645, 654 (1973) ("[U]niformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by

specialization, by insight gained through experience, and by more flexible procedure.").   Here, Plaintiff seeks to adjudicate the legality of using PHO in Crunch 'n Munch, but that is a question Congress has placed in the FDA's hands by delegating to the FDA the duty and quasi-legislative power to administer the FDCA. The case for primary jurisdiction is particularly strong here because the FDA has explicitly declared that it will review food additive petitions regarding the use of PHO—that is, FDA is actively engaged in rulemaking. *See*, *e.g.*, *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 964 (N.D. Cal. 2014) (applying primary jurisdiction where FDA was issuing final guidance on issue, finding "that the FDA is actively engaged with the very issue presented in this litigation.").   Moreover, this rulemaking requires the FDA's expertise because it implicates complex scientific evidence and the resolution of differing expert opinions. *See Astiana v. Hain Celestial Grp.*, *Inc.*, 783 F.3d 753, 760-61 (9th Cir. 2015) (primary jurisdiction applies in case involving "particularly complicated issue that Congress has committed to the FDA")

Just last fall, the Honorable Judge Thelton E. Henderson of this court invoked primary jurisdiction to stay another trans fat case. *See General Mills Inc.*, 122 F. Supp. 3d at 935.  As Judge Henderson found, trans fat lawsuits, like this one, satisfy all four *Syntek* factors. *Id.* at 933.  First, there is a need to resolve to what extent trans fats in PHO are safe in food.  *Id.*  Second, although the FDA lacks jurisdiction over state claims, "Congress granted the FDA authority to regulate food safety by requiring the pre-market approval of food additives and exempting foods that are generally recognized as safe" (citing 21 U.S.C. §§ 342, 348) and if the FDA finds some "amounts of trans fats are permissible as a food additive, this will significantly undermine [Plaintiff's] UCL claims." *Id.*  Third, "it is clear that the FDCA subjects the food industry to comprehensive regulation." *Id.*  Finally, "determinations of food ingredient safety require both specialized expertise and uniformity in administration" and present "precisely the kind of expert question that agencies are better suited to answer than courts or juries." *Id.*; *see also Red*, 2015 WL 9484398  at * 2 ("conclud[ing] that health effects of using PHOs as a food ingredient is a complex issue that should be initially determined by the FDA" and staying the action under the primary jurisdiction doctrine).  Thus, to the extent this Court does not dismiss all of Plaintiff's claims, it should nonetheless abstain from adjudicating Plaintiff's claims because the FDA's continued review of

stakeholder comments and additive petitions related to PHO usage render the regulation of PHOs an ongoing regulatory effort within the FDA's "special competence." *Saubers*, 39 F. Supp. 3d at 1111.

## VII.    CONCLUSION

For the foregoing reasons, Defendant ConAgra Foods, Inc. respectfully requests that the Court dismiss the First Amended Complaint in its entirety, with prejudice.


Dated: June 2, 2016                                    Respectfully submitted,

McGuireWoods LLP
/s/Laura Coombe
A. Brooks Gresham
Laura Coombe

Angela M. Spivey (*pro hac vice*)

Attorneys for ConAgra Foods, Inc